Michael Landon STILES, Plaintiff,

v.

CHLORIDE, INC., East Tennessee Battery Company, Inc. and Mr. Hoyt Verner t/a McCaysville Auto Parts, Defendants.

Civ. No. B–C–86–40.

United States District Court,
W.D. North Carolina,
Bryson City Division.

Sept. 2, 1987.

Douglas B. Abrams and Anna Neal Blanchard, Raleigh, N.C., and Billy D. Bailes, Ducktown, Tenn., for plaintiff.

J. William Russell, Russell, Greene & King, P.A., Asheville, N.C., for defendant East Tennessee Battery.

Frank P. Graham and Landon Roberts, Roberts, Stevens & Cogburn, P.A., Asheville, N.C., for defendant Chloride.

C.E. Hyde, Hyde, Hoover & Lindsay, Murphy, N.C., for defendant Verner and McCaysville Auto Parts.

## MEMORANDUM OF DECISION

SENTELLE, District Judge.

THIS CASE is before the Court on various motions of the several defendants for summary judgment.

Plaintiff's complaint alleges that he purchased a battery on January 4, 1985, from defendant Hoyt Verner (Verner) sold under the label of defendant East Tennessee Battery Company, Inc., (East Tennessee) and manufactured by defendant Chloride, Inc. (Chloride). The battery exploded "suddenly and without warning" on February 21, 1985, causing severe injury to plaintiff. The complaint then purports to set out fourteen claims for relief in separate counts as follows:

Count I—Negligence against Chloride

Count II—Breach of warranty against Chloride

Count III—Strict liability against Chloride

Count IV—Breach of Manguson-Moss Act against Chloride

Count V—Negligence against East Tennessee

Count VI—Breach of Manguson-Moss Act against East Tennessee

Count VII—Strict liability against East Tennessee

Count VIII—Breach of warranty against East Tennessee

Count IX—Breach of Manguson-Moss Act against East Tennessee (a duplicate of the Sixth Count)

Count X—Negligence against Hoyt Verner

Count XI—Breach of warranty against Hoyt Verner

Count XII—Strict liability against Hoyt Verner

Count XIII—Breach of Manguson-Moss Act against Hoyt Verner

Count XIV—Punitive damages against all defendants

By prior unpublished opinions, this Court has heretofore granted dispositive motions against plaintiffs with respect to (a) the strict liability claims, since North Carolina does not recognize claims founded on that theory, *Byrd Motor Lines v. Dunlap Tire & Rubber*, 63 N.C.App. 292, 299, 304 S.E.2d 773, 778 (1983) and authorities collected therein; (b) the claims founded on the Manguson-Moss Act for the reasons set forth in the unpublished decision of this Court entered July 16, 1987, following the reasoning of *Lieb v. American Motors Corp.*, 538 F.Supp. 127 (S.D.N.Y.1982), based on the failure of the complaint to meet the jurisdictional amount required under that statute, 15 U.S.C. § 2301 *et seq.;* and (c) as to all claims against Verner for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

The remaining defendants now seek summary judgment as to the remaining claims. Briefly described, these are claims for negligence against Chloride and East Tennessee Battery founded on allegations of negligence and breach of warranty and seeking punitive damages. It appearing to the Court that defendants' motions are well founded, the same will be granted by order entered contemporaneously herewith and for the following reasons.

## PUNITIVE DAMAGES

The Court will deal first with the question of punitive damages since it is the most quickly disposed of. As in all parts of this opinion, North Carolina law applies. *Erie Railroad v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In North Carolina, "punitive damages may be awarded only where the wrong is done wilfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of

the plaintiff's rights." *Hardy v. Toler*, 288 N.C. 303, 306, 218 S.E.2d 342, 345 (1975). (Citations omitted.) In the instant case, plaintiff's forecast of evidence includes no additional facts to support punitives beyond those facts asserted to support the underlying claim, none of which amounts to a circumstance of rudeness or oppression.

■ At oral argument, plaintiff asserted that defendants should be exposed to punitive damages because the evidence included support for the proposition that Chloride had research indicating that a safer battery could be made at higher cost but made an "economic decision" to continue marketing its cheaper line of batteries inclusive of the one alleged to have caused the injury here. Plaintiff offers no case from North Carolina or any other jurisdiction supporting punitive damages on that theory. If accepted, plaintiff's theory for punitive damages would mean that no manufacturer of a product having the slightest danger could dare research the safety aspect of its product as it would become immediately exposed to punitive damages the day it determined that some factor, no matter what the cost, improved the potential safety of the product unless it chose to pull all its then existing products off the shelf, absorb that loss, and go on trying to compete with the cheaper products available from other manufacturers. Plaintiff advanced no further evidence to support any punitive damages claim against East Tennessee. While the defects in plaintiff's theory of liability will be discussed *infra* under the negligence and breach of warranty heading, plaintiff's claims for punitives are totally unfounded as against East Tennessee; and without adequate evidentiary support as against Chloride and, therefore, are properly the subject of the summary judgment prayed by the defendants. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## NEGLIGENCE AND BREACH OF WARRANTY

■ As noted above, this Court has already dismissed plaintiff's claims on the theory of strict liability. As noted by

North Carolina's Court of Appeals "thus far [the North Carolina Supreme Court] has not applied the doctrine of strict or absolute liability to products liability actions. A plaintiff's claim must be based on negligence or breach of warranty." *Maybank v. S.S. Kresge Co.*, 46 N.C.App. 687, 689, 266 S.E.2d 409, 411 (1980), affirmed and modified 302 N.C. 129, 273 S.E.2d 681 (1981) (citations omitted).[1] The *Maybank* case offered by plaintiff for the proposition that a summary judgment is inappropriate to dispose of these claims actually supports the converse. In that case, plaintiff, injured by an exploding flashcube, stated a cause of action for negligence and breach of warranty, the trial judge directed verdicts for defendant as to both claims and plaintiff appealed. In affirming the directed verdict on the negligence claim, the appellate court stated, "plaintiff could have established a jury question on the issue of negligence by showing similar occurrences. No such proof was presented. Negligence is not established by the showing of one faulty product." 46 N.C.App. at 689, 266 S.E.2d at 411. (Citations omitted.) Plaintiff argues here that the similar instances are shown, but the fact of the matter is that plaintiff has offered this Court no evidentiary support for the proposition that even the battery upon which this suit was founded was defective. The further evidence that a small percentage of defendant's other products also were involved in injuries, without evidence of defect or specific cause in any instance, adds nothing to plaintiff's claim. The admissions and depositions tendered to the Court in support and in opposition to the motions for summary judgment make it plain that plaintiff has *no* evidence of any defect in the battery. Plaintiff's expert witness can only testify that there was an explosion, that this would presumably have been caused by a spark and that there was no evidence of an internal defect which could have caused the spark. He hypothesizes on several potential causes of the spark and the explosion, but has no evidence to support any of the several possible causes, none of which causally connect to any defect in the battery itself. As *Maybank v. S.S. Kresge Co., supra,* makes clear, plaintiff's evidence on negligence and breach of warranty must "[exceed] mere conjecture in proving defendant sold ... a defective product which proximately caused injury to [his] person." 46 N.C.App. 690, 266 S.E.2d at 413.

Plaintiff offers the *Maybank* decision as support for his breach of implied warranty and merchantability claim, and there is language in that decision which, taken out of context, could be read to support that proposition. "A flashcube which does not work properly and which causes the unexpected harm this flashcube caused is not merchantable. A flashcube can 'pass without objection,' be 'of fair average quality' and 'fit for ordinary purposes' and be far short of perfect. But these minimum requirements embodied in G.S. 25–2–314(2)(a), (b), (c) are not met by a flashcube which explodes." 46 N.C.App. at 688, 266 S.E.2d at 412. (Citations omitted.) That case, however, goes on to say:

"The flashcube did not appear defective or abnormal at any time from when purchased to when used. Plaintiff could not recover if it is merely conjectural if the defect existed at the time of sale. In this case where the defective product was enclosed in its original container until use and nothing occurred between the purchase and the use of the product which would indicate that the plaintiff mishandled, damaged or altered the product, the evidence does not compel a finding that the product was not merchantable at the time of the sale but the evidence is sufficient to permit a reasonable inference to the effect that the flashcube was not merchantable at the time of sale."

1. Plaintiff's theory against East Tennessee Battery Company is that a seller or distributor who sells a product under its own name brand is liable as a manufacturer. *See Carney v. Sears Roebuck & Co.,* 309 F.2d 300 (4th Cir.1962);

Restatement of Torts (2d) Section 400 (1965). In view of the result reached in this case, further discussion of plaintiff's theory is unnecessary; and the Court will treat the theory as being applicable.

No such parallel facts exist in the case at bar. Plaintiff's tendered evidence not only does not support the proposition that the defect existed at the time of sale, it is merely conjectural that any defect in the battery existed at all. Rather than being governed by the reasoning of *Maybank v. S.S. Kresge Co.*, this case is more within the contemplation of the following language:

> "Many products cannot be made completely safe to use and some cannot be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and *accompanied with adequate warnings* [emphasis supplied by the North Carolina court], they cannot be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use." *Reid v. Eckerd Drugs*, 40 N.C.App. 476, 485, 253 S.E.2d 344, 354 (1979) (quoting *Center Chemical Co. v. Parzini*, 234 Ga. 868, 218 S.E.2d 580 (1975)).

Therefore, if plaintiff has evidence to support any dangerous characteristic of the battery in question, it is only such as supports the merely arguable proposition that dry cell batteries are sufficiently dangerous to come within the proposition stated above from the *Reid* decision; and that, therefore, defendants should be liable for breaching their duty to plaintiff whether under a negligence or breach of warranty theory by inadequacy of the warning contained on the battery.

It is admitted by plaintiff in response to Chloride's request for admissions that the following warnings appeared on the top of the battery:

DANGER/EXPLOSIVE GASES

Cigarettes, flames or sparks could cause battery to explode. Always shield eyes and face from battery. Do not charge or use booster cables or adjust post connections without proper instructions and training. Keep vent caps tight and level.

POISON/CAUSES SEVERE BURNS

Contains sulfuric acid. Avoid contact with skin, eyes or clothing. In event of accident flush with water and call a physician immediately.

POISON/DANGER CAUSES SEVERE BURNS

Contains sulfuric acid. Avoid contact with skin, eyes or clothing. Antidote: EXTERNAL—Flush with water. INTERNAL—Drink large quantities of water or milk. Follow with milk of magnesia, beaten egg or veg. oil. Call physician immediately. Eyes: Flush with water 15 minutes and get prompt medical attention. Batteries produce explosive gases. Keep sparks, flame, cigarettes away. Ventilate when changing or using in enclosed space. Always shield eyes when working near batteries.

Plaintiff offers portions of his expert testimony in opposition to the motion for summary judgment wherein that witness testified that the warning should have been "more terse," should have had more letters in upper case, should have covered the entire top of the battery, and would have been more helpful had they contained a "graphic" pictorial warning. This last contention seems to be particularly unmeritorious since the evidence is undisputed that plaintiff could read, and in fact, had read the warnings. Plaintiff admits that the warning covers the injuries that can be experienced. Plainly these warnings put plaintiff on notice of the critical facts of "dangerous explosive gases," "poison acid," and the need to "shield [his] eyes." As another federal judge applying North Carolina law noted about another warning on another product, "[t]he defendant here warned the plaintiffs that there was danger involved in the use of the product and of the type of injury [plaintiff] suffered during normal use of the [product]." *Lee v. Crest Chemical Co.*, 583 F.Supp. 131, 134 (M.D.N.C.1984). The summary judgment allowed by Judge Ward in *Crest Chemical* appears equally appropriate here. As North Carolina has noted in a previous negligence and warranty action, "what we have said with respect to a lack of evidence of negligence on the part of defendant applies equally to a lack of evidence of breach of implied warranty." *Jol-*

*ley v. General Motors Corp.*, 55 N.C.App. 383, 386, 285 S.E.2d 301, 304 (1982).

This Court also finds instructive two Louisiana cases—*Hudgens v. Interstate Battery Systems of America, Inc.*, 393 So.2d 940 (La.App.1981), and *Jones v. Employers Mutual Liability Insurance Co.*, 430 So.2d 357 (La.App.1983), involving exploding batteries. In each of those cases, the Louisiana appellate court affirmed judgments dismissing plaintiff's suit on facts analogous to that in the case at bar and with reasoning analogous to that employed by North Carolina and the federal court set forth above. Additionally, in each of those cases, the adequacy of the warning was attacked; and in at least the later case, plaintiff asserted, as does plaintiff here, that the warnings should have expressly advised the use of goggles while working around the battery. Both decisions found the warning adequate as a matter of law; and in the earlier decision, the Louisiana court expressly held "we believe the above warning complies with the Consumer Products Safety Commission's labeling requirements." *Id.* at 943. The evidence concerning the Consumer Products Safety Commission in the Louisiana case dealt with a report of that Commission submitted in 1974. This Court also has before it from the Commission 49 Fed.Reg. No. 251, December 28, 1984, which in no way contradicts the decision of the Louisiana court but rather enhances it. This Court finds the Louisiana decisions to be well-reasoned and persuasive and predicts that North Carolina's courts would do the same.

## CONCLUSION

For the reasons set forth above, it appears to this Court that there is no genuine issue of material fact and that defendants' motion for summary judgment should be allowed. A judgment dismissing this action will be entered simultaneously herewith.